ASHLEY HORNE CORPORATION v. W. P. CREECH, ADMINISTRATOR
OF THE ESTATE OF J. A. VINSON.

(Filed 28 June, 1933.)

1. **Limitations of Actions B f—Claim held filed within one year of issuance of letters testamentary and action was not barred.**

     Mere notice to an executor of a claim against the decedent's estate, received without comment or approval by the executor, is not a filing of the claim within the meaning of the statute providing that where a person dies before the completion of the bar of the statute of limitations in his favor the claim will not be barred if it is one that survives and is filed with the personal representative within one year of the date of the filing of letters testamentary or of administration, C. S., 412, but where, after such notice, the executor carries the item as a debt on the books of the estate and reports it to the clerk as a debt owed by the estate, the executor's approval will be inferred, and the statute will not operate as a bar.

2. **Compromise and Settlement B c—Under facts of this case item sued on held discharged by settlement of mutual accounts between parties.**

     Where there is evidence that a mercantile business carried on by the decedent and his son as a partnership was carried on by the son as executor for several years after the father's death, and that later the

business was incorporated without change of location or method of operation, those interested being the widow and children of the deceased, the son being in entire charge of the corporation, and that the son and the personal representative of a deceased customer came to an agreement as to the amounts due by the customer to the partnership and the corporation and the amounts due by each of these concerns to the customer, and that the personal representative paid the son the amounts due to each of the concerns by the customer, and the son promised to pay the personal representative the amount due by the partnership to the customer's estate, but failed to do so, and that thereafter the partnership went into bankruptcy and the personal representative received only a small part of the amount admitted to be due by the partnership: *Held,* sufficient to sustain the findings of fact by the court after reference that a settlement had been made between the corporation, the plaintiff in the action, and the personal representative of the customer, and to sustain the judgment of the court denying recovery against the personal representative on a guaranty on a note executed by the customer to the corporation for the purchase price of land sold.

CIVIL ACTION, before *Grady, J.,* at Chambers, 24 October, 1932. From JOHNSTON.

The plaintiff is a corporation and instituted this suit on 15 July, 1929, alleging that on or about 4 January, 1921, Albert Mials became indebted to it in the sum of $6,000, and as evidence of the indebtedness executed twelve promissory notes in the sum of $500.00 each, securing the payment thereof by a mortgage deed upon the land described therein. J. A. Vinson guaranteed the payment "of this mortgage and notes mentioned herein." It was further alleged that default was made in the payment of the notes and the land sold on 28 May, 1928, for the sum of $750.00, and that after deducting the expenses of the sale, there was available the sum of $725.00 to be applied on said indebtedness. Consequently the plaintiff asked for the recovery of $6,000 with interest subject to the said credit. The defendant filed an answer alleging that Vinson died about 1 May, 1923, leaving a last will and testament, and that his brother, J. T. Vinson, qualified as executor, and that J. T. Vinson, executor, died on or about 7 December, 1925, and the defendant, W. P. Creech, was duly appointed administrator to close up the estate. The defendant further alleged that Ashley Horne, a citizen of Johnston County, died in 1913, and was the owner of a large "landed estate" in Johnston County and elsewhere, and conducted a large general merchandise time-business in the town of Clayton under the firm and style name of Ashley Horne and Son, C. S. Horne being a partner in the business. That plaintiff's testator, J. A. Vinson, conducted large business transactions with the said Ashley Horne and Ashley Horne and Son, "and made them the depository for any accumulations of his estate and sold and delivered to them cotton and cotton seed from his farm from time to time and from year to year without having yearly settle-

ments therefor, but generally conducting a running account for said business. That after the death of Ashley Horne the business of Ashley Horne and Son was conducted by C. W. Horne, the surviving partner, and this defendant is informed and believes the management of the entire property of Ashley Horne was continued by C. W. Horne without change in the character of their operations, though this defendant is informed and believes that an attempt was made in 1914 to organize what was known as the Ashley Horne Corporation and put the farm lands of the said Ashley Horne into said corporation; and that thereafter the said J. A. Vinson continued to deal with the said C. W. Horne, who was the president of the attempted organization of Ashley Horne Corporation, and was conducting and managing the said business of Ashley Horne and Son, and the said J. A. Vinson continued to deal with the said C. W. Horne, Ashley Horne and Son and the "landed estate" of said Ashley Horne as if there had been no change in the same, and was from time to time advised that it was all one business until the time of his death." J. T. Vinson, executor of J. A. Vinson, "undertook to have and did have for said plaintiff and Ashley Horne and Son, represented by C. W. Horne, a full and complete final settlement of all matters and things involved between the plaintiff and Ashley Horne and Son and the said J. A. Vinson." The defendant further alleged "that more than three years have elapsed prior to the bringing of this action since the accrual of any liability which this defendant may have had to the plaintiff, and this defendant expressly pleads such lapse of time in bar of any recovery." The defendant further pleaded a counterclaim.

After the cause was at issue Judge W. A. Devin, at the September Term, 1931, referred the same to Honorable Oliver G. Rand, as referee, to hear the evidence, find the facts, and report his conclusions of law. After conducting hearings and assembling the evidence the referee found certain facts and conclusions of law. He found that the plaintiff was entitled to recover judgment against the defendant, and that the defendant was entitled to a counterclaim against the plaintiff in the sum of $427.79. Exceptions were filed by the defendant to the report of the referee, and thereafter the parties agreed that the trial judge might hear the argument, consider the exceptions, the report of the referee, the evidence taken before him, and pass upon all questions involved. Pursuant to such agreement Judge Grady, signed the following judgment and findings of fact:

1. "That the plaintiff is a domestic holding corporation and the defendant is the administrator c. t. a., d. b. n. upon the estate of the late J. A. Vinson, having qualified as such after the death of J. T. Vinson, executor, named in the will of the said testator.

2. "Ashley Horne, late of Johnston County, died during the year 1913, leaving a large estate, personal and real, and among his various enterprises one was known as Ashley Horne and Son, which was a mercantile business located at Clayton in Johnston County. After his death in 1913, on 14 November, 1914, his widow and children organized the plaintiff corporation, and conveyed to it a large part of the landed estate which had descended to them under the law.

"3. The widow and children of Ashley Horne were the only stockholders in said corporation up to the year 1928.

"Charles W. Horne, a son, administered upon his father's estate, and entered into bond in the penal sum of $240,000, with Rena B. Horne and Swannanoa Horne as sureties thereon. Since his administration in 1913 Charles W. Horne has never filed any report in the clerk's office until 1928, when a report was prepared by an auditor and is now on file in said office.

3. "After the death of Ashley Horne in 1913 Charles W. Horne continued the business of Ashley Horne and Son, and after the issuance of the certificate of incorporation for Ashley Horne Corporation he managed that business also as its president and executive head.

"The court finds as a fact that Charles W. Horne was in control of both the plaintiff corporation and Ashley Horne and Son, occupying one office, and he being the final judge as to the methods and policies of both concerns.

4. "The court finds as a fact that in reality Ashley Horne Corporation and Ashley Horne and Son were but continuations of the estate of Ashley Horne, deceased, under different heads; and, disregarding the corporate fiction in respect to Ashley Horne Corporation, that the two institutions were in fact but one, under the dominant, paramount and controlling mind of Charles W. Horne. The records of the corporate department show conclusively that he administered its affairs with a free hand, without any direction or suggestion from the other stockholders or directors, and that all he did was ratified and approved by them.

5. "On 4 January, 1921, Ashley Horne Corporation conducted a land sale, at which J. A. Vinson purchased certain lands at an agreed price of $6,000. No deed was made to him, but by agreement his bid was assigned to one Albert Mial, to whom a deed was made, and he in turn executed to the plaintiff his 12 promissory notes under seal, each for $500.00 and payable annually on 1 January, 1922 to 1933, respectively, each drawing interest from date at six per cent per annum. Said notes were secured by mortgage deed on the property in question, and J. A. Vinson endorsed the notes.

"It was provided in said notes and in said mortgage deed that if default should be made in the payment of either one of the same that

the due date of all should thereby be accelerated, and all were to become immediately due and payable without demand.

6. "Default was made in the payment of the first note on 1 January, 1922, and thereupon the entire debt became due and payable without demand; and on said date the liability of J. A. Vinson became absolute, and the statute of limitations began to run in his favor.

"This fact is found by the referee, and there is no exception to his finding or conclusion of law in that respect.

7. "J. A. Vinson died on 1 May, 1923, and J. T. Vinson qualified as executor upon his estate, and assumed the management thereof as provided by law. Plaintiff had actual knowledge of the death of J. A. Vinson, and the administration of J. T. Vinson upon said estate. After his qualification as executor there were several conversations between him and the plaintiff in respect to the Albert Mial notes; but no claim was ever filed with him by the plaintiff, and neither he nor his successor, W. P. Creech, ever promised to pay said notes, or any part thereof. The referee finds as a fact, that said notes were carried on the books of J. A. Vinson's estate as a liability, and that finding is approved by the court; but in addition thereto the court finds that said notes were never presented for payment in the manner required by law.

8. "On or about 24 February, 1924, the Albert Mial notes were delivered to J. R. Williams, an attorney at law of Clayton, N. C., and he was requested by the plaintiff to foreclose the same. Said Williams was the regular attorney for the Vinson estate, but in this particular instance he was acting for the plaintiff, more as a favor than otherwise, and charged nothing for his services. At the sale conducted by him, J. T. Vinson bid in the land, but the sale was never consummated, and was abandoned at the time. Finally on 15 October, 1928, said mortgage was foreclosed, and a deed made to the purchaser by the plaintiff corporation, the land being bid in for the sum of $725.00.

9. "During the lifetime of J. A. Vinson there were numerous business dealings between him and Ashley Horne Corporation and Ashley Horne and Son; and after his death there was a meeting arranged between T. F. Vinson and Charles W. Horne, at which a settlement was agreed upon between them in respect to said accounts. It was agreed that Vinson should present his bills against Ashley Horne Corporation and Ashley Horne and Son, and that said Charles W. Horne should present the bills of both concerns against the Vinson estate; and that upon an agreement and adjustment of their respective claims, checks were to be issued by each in settlement of the other's claims.

10. "The parties agreed upon the amounts due, each by the other, and J. T. Vinson, acting in good faith, and fully relying upon the integrity of Charles W. Horne, executed and delivered to him checks aggregating the sum of $14,712.73, representing the amount that the

Vinson estate owed Ashley Horne Corporation, and also checks for several thousand dollars, representing the amount due by said estate to Ashley Horne and Son.

"Charles W. Horne in turn was to execute and deliver to J. T. Vinson his checks in the total sum of $21,776.67, in settlement of all amounts due him by Ashley Horne and Son.

"The checks issued by J. T. Vinson were deposited by Charles W. Horne, and paid by the bank, and his companies received the full benefit thereof. However, no checks were ever issued by him to J. T. Vinson, executor, for the agreed balance of $21,776.67, although it was expressly understood and agreed that he should do so, and Vinson's checks to him were issued upon that understanding and no other.

"Charles W. Horne walked out of the conference with Vinson's checks in his pocket, promising to issue his checks in return as soon as he could find his bookkeeper; but his bookkeeper must have disappeared over the rim of the earth, as no such checks were ever issued.

"Shortly after the transaction above set forth Ashley Horne and Son went into bankruptcy, and Vinson's estate fell heir to the infinitesimal dividends in such cases made and provided.

"Creech, the administrator, has filed a claim with the bankruptcy court for his claim of $21,776.67; but there is no evidence that anything of value will ever be realized thereon.

11. "The court finds that at the settlement between J. T. Vinson, executor, and Charles W. Horne, referred to in finding No. 10, it was contemplated by the parties that said settlement should embrace and include all claims and demands then outstanding in favor of either party against the other; that at said meeting Charles W. Horne represented all of the agencies, corporations and combinations of the Ashley Horne estate. The court is of the opinion that inasmuch as Charles W. Horne was in the active, actual and sole control of the different departments in question, both as to the Ashley Horne Corporation and Ashley Horne and Son; and owing to the fact, as found by the referee (approved by the court) that Charles W. Horne left the conference without giving his checks as promised, there was a fraud practiced by said Charles W. Horne upon J. T. Vinson, executor, and that it would be unjust, inequitable and a manifest miscarriage of justice to permit the plaintiff in this case to recover anything out of the defendant.

12. "The court finds that the claim of the plaintiff is barred by the statute of limitations; and it also finds as a fact that any claim that the plaintiff might have had against the defendant was included in the settlement referred to in finding No. 10 hereof, and that the plaintiff is not entitled to maintain this action for that reason, if for no other.

13. "The defendant has entered a counterclaim against the plaintiff, as will appear by reference to the answer. To this counterclaim the

plaintiff pleads the statute of limitations. The cause of action set out in the counterclaim is also barred by the statute of limitations, and this is found to be a fact by the court.

"All findings of fact by the referee which are in harmony with the foregoing findings by the court, are approved; and all findings of the referee which are at variance with said findings by the court are disapproved, and overruled.

"All exceptions filed by the defendant which are in harmony with the court's findings of fact are sustained; and all other exceptions are overruled.

"Upon the findings as hereinbefore set out, and the conclusions of law arrived at by the court, it is now considered, ordered and adjudged that the plaintiff is not entitled to recover anything by its writ, and the action is dismissed; it is also adjudged that the defendant is not entitled to recover anything on his counterclaim, and said counterclaim is dismissed.

"The costs of this action, including an allowance to the referee to be fixed by the court will be taxed against the plaintiff, and the surety on its prosecution bond by the clerk of this court.

"Done at Pittsboro, N. C., this 24 October, 1932."

From the foregoing judgment the plaintiff appealed.

*Abell & Shepard and Biggs & Broughton for plaintiff.*
*Larry I. Moore for defendant.*

BROGDEN, J. The two paramount questions of law involved in the appeal are:

1. Is the claim of the plaintiff barred by the statute of limitations?

2. Was there any evidence to support the findings of fact by the trial judge in findings Nos. 9 and 10 that there was a full settlement of all matters in dispute between all the parties?

The referee found that the first one of the Mial notes to the plaintiff matured on 1 January, 1922, and that there was an acceleration clause in each note "providing that in default in payment of either principal or interest that then the whole debt, as evidenced by the other bonds, should become due at once without demand. The entire indebtedness represented by the said bonds became due and payable on 1 January, 1922." The trial judge approved this finding of fact. Consequently, as Vinson died in May, 1923, the statute of limitations had commenced to run in his lifetime. Hence C. S., 412 becomes pertinent to the inquiry. This statute provides in substance that if the statute of limitations begins to run against a person in his lifetime and he dies before the bar is complete, and the cause of action survives," an action may be

commenced against his personal representative after the expiration of that time and within one year after the issuing of letters testamentary or of administration. . . . If the claim upon which the cause of action is based is filed with the personal representative within the time above specified and admitted by him, it is not necessary to bring an action upon such claim to prevent the bar, but no action shall be brought against the personal representative upon such claim after his final settlement."

Applying this statute to the facts, two questions arise: First, did the plaintiff file a claim within one year with the personal representative of J. A. Vinson, and second, did such personal representative admit the claim? The statute began to run on 1 January, 1922, and this suit was brought in July, 1929, so that if the claim of the plaintiff was not filed with and admitted by the personal representative, the claim is outlawed and the plaintiff must go out of court.

No particular form is prescribed by law with respect to the meaning of the term "filing." In some of the old books it was intimated that it was the duty of an executor or administrator to "string the claims" submitted to him for payment. The question has been discussed in the following cases: *Flemming v. Flemming,* 85 N. C., 127; *Whitehurst v. Dey,* 90 N. C., 542; *Woodlief v. Bragg,* 108 N. C., 572, 13 S. E., 211; *Turner v. Shuffler,* 108 N. C., 642, 13 S. E., 243; *Grady v. Wilson,* 115 N. C., 344, 20 S. E., 518; *Stonestreet v. Frost,* 123 N. C., 640, 31 S. E., 836; *Hinton v. Pritchard,* 126 N. C., 8, 35 S. E., 127; *Justice v. Gallert,* 131 N. C., 393, 42 S. E., 850. These cases enunciate certain indicia for solving the question involved: (a) The personal presentation of a claim to an administrator or executor, stating the amount thereof, is not a sufficient filing to suspend the running of the statute when the administrator is silent and neither rejects the claim nor admits liability. *Flemming v. Flemming, supra.* (b) The mere holding of a claim by a personal representative without objection, is not *per se* an admission of its correctness. (c) Where the administrator advised the claimant that it was not necessary to get a lawyer "that he would see the judge and do whatever he said" did not amount to a filing or waiver of the statute. *Grady v. Wilson, supra.* A claimant cannot compel an administrator "to string the claims," but if the validity of the claim is expressly recognized or admitted, this will constitute a filing. Perhaps the clearest statement of the principle appears in *Justice v. Gallert, supra,* where the Court holds that a claimant has done all he is required to do "when he has presented it to the administrator with sufficient identity as to the nature and amount of the debt, and the admission of its validity by the administrator dispenses with any formal proof thereof."

Applying these principles to the evidence, it appears that the secretary and treasurer of the plaintiff corporation said: "After I gave him as executor notice concerning the claim, Mr. J. T. Vinson came in and looked over the notes. Mr. J. T. Vinson, as executor of the estate of J. Arch Vinson, after I gave him notice and after he examined the note, did not deny liability on the part of the estate. He did not question the claim." Mere silence of an administrator when a claim is presented, does not suspend the running of the statute. *Fleming v. Fleming, supra.* However, the defendant Creech testified that "when I became administrator of the estate of Mr. J. A. Vinson, I went over the assets and claims against the estate. I found the Albert Mial note listed in the amount outstanding against the estate. . . . I reported to the court that the claim was unpaid. I had an audit made and filed it with the clerk of the Superior Court." Manifestly, whether an administrator has said anything or not when a claim is presented, if such claim is thereafter set up on the books of account of the estate as a liability of the estate, and so reported to the clerk in the official report of the personal representative, such act or conduct constitutes a filing of the claim. Therefore, the first question of law involved in the appeal must be answered in the negative.

With reference to the question as to settlement between the parties, it appears from the evidence that the Horne Corporation was composed of the children of Ashley Horne. C. W. Horne, a son of Ashley Horne, was the president of the corporation and general manager of the business. C. W. Horne was also a member of the partnership of Ashley Horne and Son, and the evidence tends to show that the Horne business was carried on in the same building, according to the same methods, and in the same offices, theretofore used prior to the death of Ashley Horne in 1913. Indeed there was evidence that C. W. Horne had stated that it was the same business and that the whole estate was liable for the operation of the business enterprises. There was also evidence that on the night of 11 February, 1924, J. T. Vinson executor, had an engagement with C. W. Horne to settle the mutual accounts between his testator, J. A. Vinson, and the Horne Corporation, and the mercantile business of Ashley Horne and Son, and that after the amounts had been determined, Vinson, executor, gave a check in full, which was received by C. W. Horne, and Horne promised to give Vinson a check for the amount due the estate of his testator by Ashley Horne and Son, on the next day. The check was not forthcoming, and shortly thereafter Ashley Horne and Son was adjudicated a bankrupt.

In cases of this type the eye of the law sinks deep into the situation and dealings between the parties to discover the heart of the transaction. The law moves along straight lines to ascertain, establish and enforce

fundamental justice between men and does not dissipate its energies in fencing with legal fictions, boxing with legal shadows, and wrestling with legal puppets.

It cannot be said that there is no competent evidence to support the findings of fact made by the trial judge to the effect that there had been a settlement between the parties. Therefore, the findings must stand, and the judgment is approved.

Affirmed.